IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARK RESOURCES, INC., : | |
| Plaintiff : | |
| : | Civil Action No. 1:10-cv-1119 |
| v. : | (Chief Judge Kane) |
| : | |
| VERIZON BUSINESS NETWORK : | |
| SERVICES, INC., : | |
| Defendant : | |

## MEMORANDUM

Before the Court is Defendant's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's multiple claims arise from an alleged breach of contract related to a Pennsylvania Department of General Services Request for Proposal in which Defendant served as a general contractor and Plaintiff served as a subcontractor. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). For the reasons explained herein, the Court will grant Defendant's motion to dismiss in part, deny the motion to dismiss in part, and order Plaintiff to file an amended complaint.

**I.    BACKGROUND**

On November 12, 2008, the Pennsylvania Department of General Services issued a Request for Proposal related to a telecommunications project. (Doc. No. 1-2 ¶ 3.) Defendant Verizon Business Network Services contacted Plaintiff Clark Resources to assist in Defendant's bid for the project. (Id. ¶ 8.) In response to Defendant's request, Plaintiff produced a subcontract proposal indicating that it would supply Defendant with seven "helpdesk agents" for the project over the course of seven years at a total cost of $2,806,505. (Id. ¶¶ 13-14.) Defendant ultimately

1

used Plaintiff's proposal when submitting its own proposal to the Department. (Id. ¶ 18.)

Plaintiff contends that prior to the ultimate award of the contract, Defendant provided Plaintiff with oral and written assurances that Defendant would use Plaintiff as a subcontractor on the project, contingent on the award from the Department. (Id. ¶ 19.) Plaintiff notes that Defendant referred to Plaintiff as a member of "the Verizon team" during Defendant's presentation to the Department. (Id. ¶ 25.) And Defendant "explicitly manifested its intent to negotiate with [Plaintiff] in good faith upon the award of the project to [Defendant]." (Id. ¶ 22.) Plaintiff further contends, that in exchange for Defendant's promise to use Plaintiff as a subcontractor on the project, Plaintiff engaged in lobbying in support of Defendant's proposal. (Id. ¶¶ 20, 24.)

However, Plaintiff's efforts proved to be for naught. On September 28, 2009, Defendant informed Plaintiff that it would only require two of Plaintiff's helpdesk agents to work on the project, rather than the seven Plaintiff had anticipated. (Id. ¶¶ 27-28.) Plaintiff rejected this reduction in the scope of the project, and Defendant declined to negotiate the issue. (Id. ¶¶ 29-30.) When Defendant's proposal was subsequently accepted by the Department, Defendant replaced Plaintiff with a different subcontractor. (Id. ¶ 32.)

Plaintiff filed a complaint in the Court of Common Pleas of Dauphin County on April 26, 2010, asserting five causes of action based on Pennsylvania law.[1] Defendant removed the case pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446. The motion for removal was granted. On July 1, 2010, Defendant moved to dismiss each of Plaintiff's claims pursuant to Rule 12(b)(6).

---

[1] The parties do not dispute that Pennsylvania substantive law applies to the claims raised.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing a Rule 12(b)(6) motion, a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir.2004). The motion will only be is properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held that while the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

## III. DISCUSSION

In its complaint, Plaintiff raises five claims for relief. Count I asserts a claim for breach of contract for Defendant's failure to award Plaintiff the subcontract. Count II asserts a claim for specific performance of the contract. Count III asserts a claim for promissory estoppel related to Defendant's failure to award Plaintiff the subcontract. Count IV asserts a claim for breach of contract for Defendant's failure to negotiate changes to the subcontract proposal in good faith. Finally, Count V asserts a claim for unjust enrichment because Plaintiff was not compensated for the lobbying efforts it undertook on behalf of Defendant's proposal. The Court will consider Defendant's motion to dismiss each claim in turn.

### A. Breach of Contract

In Count I of its complaint, Plaintiff alleges that "the identification of [Plaintiff] as [a minority business enterprise] in [Defendant]'s submission to [the Department of General Services] constituted a binding commitment by [Defendant] to use [Plaintiff] as a subcontractor if it was awarded the contract." (Doc. No. 1-2 ¶ 37.) In its complaint Plaintiff relies on the Department of General Services' Request for Proposal to support this claim for relief. In its memorandum in opposition to Defendant's motion to dismiss, however, Plaintiff abandons this theory.

A solicitation of bids by a general contractor coupled with the submission of a bid by a subcontractor does not give rise to a contract binding on the general contractor. Nat'l Constr. Servs. v. Phila. Reg'l Port Auth., 789 A.2d 306, 309 (Pa. Commw. Ct. 2001). Even where a subcontractor's bid is subsequently used by the general contractor in calculating its bid, a contract will not be found. See, e.g., Project Dev. Grp v. O.H. Materials Corp., 766 F. Supp.

4

1348, 1352 (W.D. Pa. 1991), aff'd 993 F.2d 225 (3d Cir. 1993); see also A. Corbin, Corbin on Contracts § 2.31 (Rev. ed. 1993) ("Use of the bid is not an acceptance.").

Likewise, the Commonwealth Court of Pennsylvania has previously found that a Request for Proposal does not give rise to a contract. Commonwealth v. On-Point Tech. Sys., 821 A.2d 641, 649 (Pa. Commw. Ct. 2003). As in On-Point, the language in the Request for Proposal form at issue here cannot reasonably be read to give rise to a contract. The very first paragraph of the form makes clear that the form only serves to provide "information to enable [those interested] to prepare and submit proposals." (Doc. No. 1-2, Ex. A, at 20.) Further, the Request for Proposal states that submissions do not constitute a "legal and valid contract, in law or in equity." (Id., Ex. A, at 28.) And the provisions relied upon in Plaintiff's complaint state that the provisions only "become a contractual obligation once the contract is fully executed." (Id., Ex. A, at 40.) This limiting language in the Request for Proposal "clearly demonstrated that subsequent manifestations of assent were prime requisites to the formation of a contract." On-Point, 821 A.2d at 649.

Plaintiff does not attempt to dispute that the Request for Proposal process could not give rise to a contract in its response to Defendant's motion to dismiss. Rather, Plaintiff recharacterizes its contract claim as one based on the existence of an oral contract, presumably independent of the Request for Proposal. (Doc. No. 9-2 at 11.) In support of this new theory, Plaintiff cites those paragraphs of its complaint in which it states that Plaintiff "provide[d] Verizon with information necessary to submit a proposal"; "agreed to submit a formal proposal"; and "submitted a proposal." (Id. ¶¶ 11-14.) Plaintiff further contends in its complaint that "Verizon acknowledged that it would use Clark to supply seven (7) helpdesk agents for the

5

Project if DGS awarded the contract to Verizon." (Id. ¶ 19.) In support of this statement, Plaintiff cites an email, sent by a representative of Defendant to Plaintiff on February 25, 2009, which states in part:

> We are wrapping up the final elements of our proposal response to the Commonwealth. I wanted to send you a note to introduce you to Mark Kirsch from Adept Consulting Services, Inc. Adept will be the lead on the Help Desk services for the Verizon response to the Commonwealth. Mark is anxious to meet with you since Clark Resources will be providing 7 Help Desk agents in support of the project.

(Id., Ex. G, at 164.)

This theory was not raised with any clarity in Plaintiff's initial complaint. As such, the facts Plaintiff is able to muster in support of the theory are vague at best. And it is questionable whether any facts exist such that Plaintiff could support this theory to the level of plausibility required by the federal pleading standards. See Phillips, 515 F.3d at 231-32 (quoting Twombly, 550 U.S. at 555). However, in light of our liberal pleading standards and the existence of some facts in the complaint that may, upon more thorough pleading, reveal the plausible existence of a contract, this Court will grant Plaintiff leave to file an amended complaint

### B. Specific Performance

Plaintiff's second claim for relief is presented as a claim for specific performance. However, "[s]pecific performance and injunction are alternatives to the award of damages as means of enforcing contracts. Specific performance is by definition limited to the enforcement of contract duties." Restatement (Second) of Contracts ch. 16, topic 3, intro. note (1981); see also U.S. Claims, Inc. v. Flomenhaft, 519 F. Supp. 2d 532, 541 (E.D. Pa. 2007). Plaintiff makes no effort to dispute this conclusion. Because specific performance is a remedy, not a

freestanding legal claim, Defendant's motion to dismiss must be granted.

C.     **Promissory Estoppel**

Plaintiff's third count alleges a cause of action for promissory estoppel. Pennsylvania has adopted the doctrine of promissory estoppel embodied in the Second Restatement of Contracts. Central Storage & Transfer Co. v. Kaplan, 410 A.2d 292, 294 (Pa. 1979). Under this formulation of the doctrine, the elements of a claim of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect will induce action by the promisee; (3) which does induce such action; and (4) which should be enforced to prevent injustice to the promisee. Restatement (Second) of Contracts § 90 (1981); C & K Petrol. Prods., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988). Further, the United States Court of Appeals for the Third Circuit has noted that the promise must be sufficiently clear so as to justify a finding that the promisor should have reasonably expected it to induce the promisee to rely on the promise. Id.

Plaintiff's complaint is devoid of any factual allegation of a promise sufficiently definite to be reasonably relied upon by Plaintiff. Plaintiff makes a bald assertion that "Verizon promised Clark that it would use Clark for the performance of a specified set of services on the Project at a specified price." (Doc. No. 1-2, ¶ 52.) This allegation, however, is belied by the exhibits Plaintiff attaches to its complaint. As explained, supra, any promises made by Defendant to Plaintiff were made contingent on Defendant winning a contract bid followed by a successful negotiation between Plaintiff and Defendant on the subcontract. In other words, even if this Court assumes a promise was made, that promise would have been contingent on the successful conclusion of a process that was contingent on the successful conclusion of another process, the latter of which neither Defendant nor Plaintiff had any control over. See, e.g., Josephs v. Pizza

7

Hut of Am., 733 F. Supp. 222, 227 (W.D. Pa. 1989) (holding plaintiff's reliance on defendants' representations that they would lease a building was not reasonable where the promise was contingent on corporate approval). In light of the necessarily speculative nature of any potential promises that may have been made, Plaintiff's third claim cannot survive scrutiny under Twombly and Iqbal, and Defendant's motion to dismiss must be granted.

    **D.**    **Breach of Duty to Negotiate in Good Faith**

In Count Four of its complaint, Plaintiff asserts a cause of action for breach of the duty to negotiate in good faith. Plaintiff contends that the duty arose in connection with a "teaming agreement." (Doc. No. 1-2 ¶¶ 60-63.) Plaintiff does not specify in its complaint when the teaming agreement was entered, nor does it attach a "teaming agreement" to its complaint. Indeed, Plaintiff does not even clearly state that any agreement was actually entered. Plaintiff asserts that "Verizon requested that Clark enter into an agreement." (Id. ¶ 59.) And Plaintiff asserts that it performed according to the agreement. (Id. ¶ 62.) However, the complaint never asserts that Defendant formally agreed to "team." In its memorandum in support of its motion to dismiss, Defendant treats a Letter of Intent dated February 11, 2009, as forming the basis of the agreement to negotiate in good faith. (Doc. No. 6 at 9; Doc. No. 1-2, Ex. I.) Plaintiff does not dispute that this is the source of the duty giving rise to the claim. (Doc. No. 9-2 at 17.) Therefore, in the absence of any conceivable alternative agreement to consider, this Court will analyze this claim in light of this understanding of the complaint.

    *1. Existence of a Duty to Negotiate in Good Faith*

As an initial matter, Defendant argues that Plaintiff's claim alleging a breach of the duty to negotiate in good faith must fail because Pennsylvania does not recognize such a cause of

action. Defendant is correct that the Supreme Court of Pennsylvania has, to date, declined to advise whether a cause of action for the breach of a duty to negotiate in good faith exists. GMH Assocs. v. Prudential Realty Grp., 752 A.2d 889, 903 (Pa. Super. Ct. 2000). However, the Third Circuit has predicted that Pennsylvania would recognize such an action. Flight Sys., Inc. v. EDS Corp., 112 F.3d 124, 129 (3d Cir. 1997) (citing Channel Home Ctrs. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986)).

Acknowledging that the Third Circuit has predicted that Pennsylvania would adopt the cause of action, Defendant argues that the Supreme Court of Pennsylvania has expressed sufficient disapproval of claims asserting the duty to negotiate in good faith to justify this Court parting ways with the Third Circuit. The Court does not agree. Defendant is unable to identify a single decision contradicting the Third Circuit's prediction. Instead, Defendant can only muster one per curiam Pennsylvania Supreme Court decision in which the three dissenting justices expressly adopt the cause of action. Dep't of Gen. Servs. v. On-Point Tech. Sys., 870 A.2d 873, 874 (Pa. 2005). Defendant reasons that if the three dissenting justices adopt the cause of action, then the four justices in the majority must oppose the cause of action. This argument is unavailing.

Contrary to Defendant's argument, those justices in the majority in On-Point very well may recognize the cause of action for breach of the duty to negotiate in good faith, but declined to join the dissent because they did not find the factual record justified reversal. The per curiam decision in On-Point merely affirmed the decision of the Commonwealth Court, which rested its decision on the lack of sufficiently definite terms to form a contract. Commonwealth v. On-Point Tech. Sys., 821 A.2d 641, 649 (Pa. Commw. Ct. 2003). Therefore, there is no evidence

9

to support Defendant's assertion that the Third Circuit's prediction was incorrect, and this Court will follow the binding precedent of Flight Systems, 112 F.3d at 129, and Grossman, 795 F.2d at 299, and find that a cause of action for the breach of the duty to negotiate in good faith does exist.

*2. Whether Duty to Negotiate in Good Faith was Breached*

Establishing the existence of the cause of action is not dispositive of the issue, however. Under Pennsylvania law, the test for enforceability of an agreement, including an agreement to negotiate in good faith, is whether: (1) both parties manifested an intent to be bound; (2) the terms of the agreement are sufficiently definite; and (3) there was consideration. Grossman, 795 F.2d at 299. Defendant asserts Plaintiff failed on each element. This Court will consider these arguments in turn.

*i.     Manifest Intention to be Bound*

Formation of a contract requires an agreement or mutuality of assent. Philmar Mid-Atlantic, Inc. v. York St. Assocs. II, 389 Pa. Super. 297, 566 A.2d 1253, 1255 (Pa. Super. Ct. 1989). However, "[a] true and actual meeting of the minds is not necessary to form a contract." Ingrassia Constr. Co. v. Walsh, 486 A.2d 478, 482-83 (1984). Rather, the Court must look to the parties' "outward and objective manifestations of assent" to determine whether a contract has arisen. Id. In the present case, Plaintiff has pleaded sufficient facts to establish an intention to be bound for purposes of a motion to dismiss.

Plaintiff has provided a letter from Defendant, signed by Defendant's representative, in which Defendant "agrees to enter into good faith negotiations with Clark Resources . . . to provide services to Verizon in support of a prime contract." (Doc. No. 1-2, Ex. I.) In addition,

10

Plaintiff alleges that it "worked alongside Verizon in its attempt to secure the DGS Project by, inter alia, sending correspondence to DGS in support of Verizon, participating in telephone conferences with DGS, attending meetings with DGS, and assisting Verizon in making a formal presentation to DGS in connection with the Project." (Doc. No. 1-2 ¶ 24.)

Notably, Defendant does not appear to dispute this conclusion. In its reply memorandum, Defendant contends "it is clear that Verizon intended its letter of intent to Clark to be nothing more than an agreement to negotiate in the event the Commonwealth awarded the contract to Verizon." (Doc. No. 10 at 10-11 n.4.) Given that Plaintiff is alleging a breach of the duty to negotiate in good faith, Defendant's admission that it "intended" the letter to serve as an agreement to do the same, is a compelling argument against Defendant's position. Plaintiff's alleged activity on behalf of Defendant, coupled with the communication between the parties, suggests that Plaintiff's allegation of a mutual intent to be bound is at least "facially plausible." Fowler, 578 F.3d at 210 (quoting Iqbal, 129 S. Ct. at 1955).

    ii.  *Sufficiently Definite Terms*

It is a fundamental rule of contract law that "[c]ourts do not make contracts." A. Corbin, Corbin on Contracts § 4.1 (Rev. ed. 1993). The parties themselves must supply the essential terms of the contract. ATACS Corp. v. Trans World Commc'n., 155 F.3d 659, 666 (3d Cir. 1998). In the absence of these essential terms, a court will have nothing to enforce. Id. This Court is presented with what can only charitably be described as a succinct agreement. The full text of what Plaintiff dubs the "teaming agreement" reads as follows:

> Re: Letter of Intent to Team, Solicitation Number 6100004339,
> Commonwealth of PA, Telecommunications Managed Services

> Dear Mr. Clark:
>
> Verizon Business ("Verizon") intends to submit a proposal to the Commonwealth of Pennsylvania, in response to Solicitation Number 6100004339 for Telecommunications Managed Services.
>
> Upon notification of award from the Commonwealth for the above referenced Solicitation, Verizon agrees to enter into good faith negotiations with Clark Resources, a Commonwealth of Pennsylvania certified Disadvantaged Business to provide services to Verizon in support of a prime contract.
>
> We look forward to working with Clark Resources on this project. Please don't hesitate to contact me [via email] if you have any question.
>
> Sincerely,
> Loralie Bellows
> Verizon Strategic Contracts & Sourcing

(Doc. No. 1-2, Ex. I.) Left unstated in this "teaming agreement" are the services for which Verizon would be negotiating, price terms for those services, or the scope of those services. Nor does this agreement provide any terms outlining what Plaintiff was obligated to do to comply with this teaming agreement. In light of this brief letter, this Court would have no way of judging whether Defendant's offer to employ two workers was a breach of the duty to negotiate in good faith.

The lack of such terms clearly distinguishes the agreement here from the agreement in Grossman, where the Third Circuit previously recognized the duty to negotiate in good faith. 795 F.2d at 298. In Grossman, the court emphasized that the letter of intent was detailed, including specific terms regarding the land to be leased, the proposed term and rent, option periods, tax liability, maintenance obligations, and duties of both parties providing consideration for the agreement. Id. at 293-94 n.2.

Because the alleged agreement at issue here is insufficiently clear, this count of the complaint cannot survive scrutiny under Iqbal and Twombly. However, the Court notes that although this appears to be the only agreement included in the complaint which could conceivably give rise to an agreement to negotiate, although it cannot "plausibly" give rise to such an agreement, Plaintiff does make reference in its complaint to another document which is not attached to the complaint. Specifically, Plaintiff includes an email exchange dated December 23, 2008, and December 31, 2008, in which Plaintiff and Defendant exchange a "Letter of Engagement." (Doc. No. 1-2, Ex. H.) It is conceivable that the inclusion of this letter or the allegation of further facts suggesting the parties intended to incorporate other terms in the letter of intent might permit Plaintiff to survive a Rule 12(b)(6) motion on this claim. Therefore the Court will grant Plaintiff leave to amend its complaint.

### E. Unjust Enrichment

Finally, in Count V of Plaintiff's complaint, Plaintiff asserts a claim for unjust enrichment for "services and assistance to Verizon throughout the course of the RFP process at the request and benefit [sic] of Verizon, fully expecting to be compensated for such services." (Doc. No. 1-2, ¶ 70.) To state a claim for unjust enrichment, Plaintiff must establish: (1) a benefit conferred on Defendant by Plaintiff; (2) appreciation of said benefit by Defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be unjust for Defendant to retain the benefit without compensating Plaintiff. Safe Auto Ins. Co. v. Berlin, 991 A.2d 327, 336 n.6 (Pa. Super. Ct. 2010).

On Plaintiff's theory of the case, Plaintiff's assistance with the Request for Proposal process, including "appearing on its behalf at meetings and performing other governmental

relations services," was the benefit conferred. (Doc. No. 1-2 ¶¶ 20, 70.) Defendant benefitted from those services. (Id. ¶ 71.) And Plaintiff asserts that Defendant must compensate Plaintiff to avoid injustice. (Id. ¶ 72.)

Defendant is correct that as a general matter, claims of unjust enrichment based on a subcontractor providing a bid to a contractor are without merit. Indeed, such a theory would fly in the face of the well-settled proposition that general contractors are free to accept or reject bids, even those subcontractor bids that are used in the general contractor's final bid. See, e.g., A. Corbin, Corbin on Contracts § 2.31 (Rev. ed.1993). In these cases subcontractors are not providing a benefit to general contractors, but rather making an investment in the hopes that it will receive some return. As Judge Brody in the Eastern District of Pennsylvania explained, unjust enrichment does not apply "where preliminary services are conferred for business reasons, without the anticipation that reimbursement will directly result, but rather, with the expectation of obtaining a hoped-for contract. . . ." Trianco v. IBM, 583 F. Supp. 2d 649, 655 (E.D. Pa. 2008) (quoting Johnson v. Gudmundsson, 35 F.3d 1104, 1114 (7th Cir. 1994)); see also Holman Erection Co. v. Orville E. Madsen & Sons, Inc., 330 N.W.2d 693, 698 (Minn. 1983) (explaining that costs associated with the bidding process are properly understood as "part of the overhead of doing business.").

Plaintiff here, however, has not asserted a bald claim of unjust enrichment based on the bidding process. Rather, Plaintiff claims it engaged in active lobbying on behalf of Defendant. (Doc. No. 1-2 ¶¶ 20, 24, 70.) It is unclear how exactly Plaintiff expected to be "compensated" for its services. Plaintiff acknowledges that Defendant rejected its proposal to enter into a monthly fee arrangement. (Id. ¶ 21.) However, Defendant did apparently agree to "jointly build

14

a business model to engage [Plaintiff] in areas of some of our key accounts to address specific applications or tasks." (Id., Ex. H, at 166). To that end, the cases cited by Defendant in support of its motion to dismiss are inapposite. Based on the complaint, this Court holds that it is plausible that Plaintiff could establish a claim of unjust enrichment for "government service work" done for Defendant that goes beyond the normal business activities involved in the bidding process. Therefore, Defendant's motion to dismiss Count V of the complaint will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARK RESOURCES, INC., | : | |
|     Plaintiff | : | |
| | : | Civil Action No. 1:10-cv-1119 |
| v. | : | (Chief Judge Kane) |
| | : | |
| VERIZON BUSINESS NETWORK SERVICES, INC., | : | |
| | : | |
|     Defendant | : | |

## ORDER

**NOW**, on this 30th day of November 2010, for the reasons set forth in the memorandum accompanying this order, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss Plaintiff's complaint, (Doc. No. 6), is **GRANTED** in part and **DENIED** in part as follows:

1. Plaintiff is granted leave to amend Counts I and IV of its complaint to clarify the contracts it is seeking to enforce. The amended complaint shall be filed within ten (10) days of the date of this order.

2. Defendant's motion to dismiss Counts II and III of Plaintiff's complaint is **GRANTED**;

3. Defendant's motion to dismiss Count V of Plaintiff's complaint is **DENIED**.

                                                                                         S/ Yvette Kane_____
                                                                                         Yvette Kane, Chief Judge
                                                                                         United States District Court
                                                                                         Middle District of Pennsylvania