**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARK RESOURCES, INC.,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:10-cv-1119** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **VERIZON BUSINESS NETWORK** | : | |
| **SERVICES, INC.,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Currently pending before the Court is Defendant Verizon Business Network's motion for summary judgment as to the sole remaining claim in Plaintiff Clark Resources's amended complaint. (Doc. No. 65.) The Court held oral argument on the motion on March 26, 2012. The matter has been fully briefed and is now ripe for disposition. For the reasons stated herein, the Court will grant Defendant's motion for summary judgment.

**I. BACKGROUND**

On November 12, 2008, the Pennsylvania Department of General Services issued a Request for Proposal related to a telecommunications project. (Doc. No. 67 ¶ 8.) Defendant elected to bid on the project. (Id. ¶ 9.) In December 2008 and January 2009, Defendant solicited bids from Plaintiff related to the prime contract. (Id. ¶¶ 14-15.) In response to Defendant's request, Plaintiff produced a subcontract proposal on February 9, 2009. (Id. ¶ 18.) On February 25, 2009, Frank Clark, Plaintiff's President and CEO, met with Bette DeRogatis, Defendant's Area Sales Vice President for Government and Education in Pennsylvania and Delaware, to discuss Plaintiff's proposal. (Id. ¶ 27.) Following the discussion, Ms. DeRogatis informed Mr. Clark that "this is the document that we are going to use as the basis of our contract of our

1

agreement, you have a deal." (Doc. No. 71 ¶ 21.) Plaintiff contends that this statement

constitutes an acceptance of a subcontract agreement between Defendant and Plaintiff on the

Department's Request for Proposals. (Id. ¶ 32.) Ms. DeRogatis did not have the actual authority

to bind Defendant. (Doc. No. 67 ¶ 101.) Mr. Clark believed she had the authority to bind

Defendant because Ms. DeRogatis held herself out as being in charge of the project, was the

highest ranking employee of Defendant who was introduced to him, had the title of "Area Sales

Vice President, Government and Education," her territory covers Pensylvania and Delaware, and

everyone he dealt with at Verizon reported to her. (Doc. No. 71 ¶¶ 101-02.)

 In September 2009, Plaintiff agreed to a restructuring of the subcontract such that

Plaintiff would perform certain tasks as a subcontractor of Adept, one of Defendant's other

subcontractors on the project. (Doc. No. 67 ¶ 124.) On September 25, 2009, and September 28,

2009, Defendant and Plaintiff discussed limiting the scope of Plaintiff's work on the contract to

two project management positions. (Doc. No. 71 ¶ 135.) Plaintiff refused to agree to the limited

scope of work. (Id. ¶¶ 137, 139.) On October 8, 2009, Defendant advised the Department that

it was unable to "successfully conclude negotiations with Clark." (Doc. No. 67 ¶ 141.) On

October 13, 2009, Defendant informed Plaintiff that it would not enter into a subcontract with

Plaintiff. (Id. ¶ 142.) The Office of Procurement approved Defendant's decision to substitute

Adept for Plaintiff on the contract. (Id. ¶ 143.) On October 9, 2009, Defendant was awarded the

prime contract from the Department. (Id. ¶ 144.)

## II.   STANDARD OF REVIEW

 Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

warranted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Grp.. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some

3

metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   DISCUSSION

Defendant raises four independent grounds which it contends warrant entering summary judgment in favor of Defendant.  First, Defendant contends that the alleged oral agreement is unenforceable because the agreement lacks material and necessary terms and, if the Court were to supply the absent necessary terms, those terms would require summary judgment be entered in favor of Defendant.  Second, relying on a flow-down agreement between the parties, Defendant argues that the Request for Proposal bars Plaintiff's claims.  Third, Defendant claims that Ms. DeRogatis had neither the authority nor apparent authority to bind Defendant to a contract with Plaintiff.  Finally, Defendant argues that if the Court declines to grant summary judgment on these grounds, that the Court should grant partial summary judgment.  The Court will address the first three arguments in turn.  Because the Court finds that the motion for summary judgment should be granted as to all of Plaintiff's claims, the Court will not consider Defendant's motion for partial summary judgment.

### A.   Presence of Essential Terms

A contract is formed where: (1) the parties manifest a mutual intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there is consideration.  Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 533 (3d Cir. 2009); Co. Image Knitware, Ltd. v. Mothers Work, Inc., 909 A.2d 324, 330 (Pa. Super. Ct.

2006) (quoting <u>Weavertown Transp. Leasing, Inc v. Moran</u>, 834 A.2d 1169, 1172 (Pa. Super. Ct. 2003)).  Defendant's first argument in support of summary judgment is that the alleged oral agreement is unenforceable because the agreement lacks clarity as to certain essential terms of the agreement.  Defendant's argument raises two closely related issues.  First, Defendant argues that some essential terms are unclear.  Second, Defendant contends that some essential terms are lacking entirely.  Specifically, Defendant contends that the agreement is unclear as to the price term, the scope of work, the number of employees, and service level agreements.

It is elementary that an agreement is only enforceable if the material and necessary details of the bargain are set forth with sufficient clarity.  <u>Peck v. Del. Cnty. Bd. of Prison Inspectors</u>, 814 A.2d 185, 191 (Pa. 2002) (quoting <u>Lombardo v. Gasparini Excavating Co.</u>, 123 A.2d 663, 666 (Pa. 1956)); <u>Lackner v. Glosser</u>, 892 A.2d 21, 30-31 (Pa. Super. Ct. 2006).  This rule requires that a "a reasonably certain basis exists upon which a court could grant an appropriate remedy."  <u>Geisinger Clinic v. DiCuccio</u>, 606 A.2d 509, 512 (Pa. Super. Ct. 1992).  However, "[t]he construction of an oral contract is for the jury when there is any doubt about its terms."  <u>Koch v. Matter</u>, 161 A. 309, 309 (Pa. 1932) (quoting <u>Elliott v. Wanamaker</u>, 25 A. 826 (Pa. 1893)); <u>Krebs v. United Ref. Co.</u>, 893 A.2d 776, 783 (Pa. Super. Ct. 2006) ("When oral contracts are disputed, the issues of what was said, done and agreed upon by the parties are ones of fact to be determined by the fact finder.").  Further, issues regarding what the parties intended are questions of fact reserved for the fact finder.  <u>Mazzella v. Koken</u>, 739 A.2d 531, 536 (Pa. 1999); <u>McDonnell v. Ford Motor Co.</u>, 643 A.2d 1102, 1105-06 (Pa. Super. Ct. 1994).

In the present matter, Plaintiff has identified evidence from which a juror could conclude that the parties reached an agreement on the essential terms of the contract, including the price

terms, service level agreements, scope of work, and time for performance.  (Doc. No. 71 ¶¶ 8-38.)  Defendant's primary arguments in opposition to Plaintiff's position is that Plaintiff's theory of contract formation is not credible.  Specifically, Defendant contends that contradictory statements by Mr. Clark suggest that the parties did not in fact agree to any specific terms.  Questions of credibility, however, are questions of fact for a jury.  Determining whether to believe Plaintiff regarding what terms the parties reached an oral agreement on is beyond the authority of the Court at this stage of the proceedings.  Because there are facts in dispute regarding what terms were agreed upon and what the content of said agreement was, the Court will decline to grant summary judgment on this basis.

###### B.     Flow-Down Agreement

Next, Defendant contends that summary judgment is warranted because the terms of the prime contract, as incorporated in the subcontract, precludes a finding in favor of Plaintiff.  On February 3, 2009, three weeks before the alleged oral agreement was entered into, Plaintiff signed a document with the subject line "Flow-Down Obligations,"[1] which provides that "[Plaintiff] also agrees that it accepts all of the terms and conditions required of [Defendant] under the said [Request for Proposals], and will indemnify and hold [Defendant] harmless for the services that [Plaintiff] provides as a [Defendant] subcontractor."  (Doc. No. 68-7.)  The stated purpose of Plaintiff accepting the agreement was to "induce [Defendant] to use [Plaintiff] as a subcontractor for work under the above-referenced RFP.  (Id.)  Defendant argues that this document, which Defendant characterizes as a flow-down provision, incorporates all terms and

---

[1] Other courts have referred to this type of agreement as a "flow-through agreement," a "pass-through agreement," a "conduit clause," and an "incorporation clause."  To avoid confusion the Court will use the terminology employed by the parties in their briefs, namely "flow-down agreement," to refer to the provision in question.

conditions of the Request for Proposals between Defendant and the Commonwealth into the

subcontract between Defendant and Plaintiff.  Notably, Defendant argues that the provisions in

the Request for Proposals requiring contracts be in writing, prohibiting recovery for lost profits,

and permitting termination without cause bar Plaintiff's contract claim.  The Court agrees.

As a general matter, Pennsylvania law endorses the concept of a flow-down agreement.

Century Indem. Co., 584 F.3d at 534; Bernotas v. Super Fresh Food Mkts., Inc., 863 A.2d 478,

481-83 (Pa. 2004);[2] Roman Mosaic & Tile Co. v. Thomas P. Carney, Inc., 729 A.2d 73, 78 (Pa.

Super. Ct. 1999) (enforcing the terms of a flow-down agreement to apply the terms of the prime

contract to the terms of a subcontract).  Such agreements serve to place the subcontractor in the

same position vis-a-vis the general contractor, as the general contractor vis-a-vis the project

owner.  See, e.g., Bernotas v. Super Fresh Food Mkts., Inc., 816 A.2d 225, 231 (Pa. Super. Ct.

2002) (explaining that the purpose of a flow-down agreement is to "assure that a subcontractor is

bound to the prime contractor in the same manner that the prime contractor is bound to the

owner"), rev'd on other grounds, 863 A.2d 478 (Pa. 2004); L & B Constr. Co. v. Ragan Enters.,

482 S.E.2d 279, 282 (Ga. 1997).  Further, relying on appellate courts in Alaska and Washington

---

[2] In Bernotas, the Pennsylvania Supreme Court reversed a Superior Court ruling that an indemnification clause in the prime contract was incorporated into the subcontract via a flow-down agreement.  The Pennsylvania Supreme Court held that such a finding violated Pennsylvania's strong public policy of requiring "clear and unequivocal agreement before a party may transfer its liability to another party."  Bernotas, 863 A.2d at 482-84.  The Pennsylvania Supreme Court did not, however, disapprove of flow-down agreements generally, and indeed appeared to broadly endorse the concept of a flow-down agreement while carving out a narrow exception requiring such agreements to explicitly reference indemnification clauses if indemnification agreements are to flow down to the subcontractor.  Id. at 484.  Incidentally, in addition to agreeing to "accept[] all terms and conditions required of [Defendant]," the flow-down agreement at issue in the present matter also explicitly provides that Plaintiff will indemnify Defendant for services provided as a subcontractor, thus curing the defect identified in Bernotas.

state, the Pennsylvania Supreme Court has explained that a flow-down agreement could operate to incorporate both the substantive and procedural terms of a prime contract into the terms of a subcontract.  Id. (citing Indus. Indem. Co. v. Wick Constr. Co., 680 P.2d 1100, 1106 (Alaska 1984); Sime Constr. Co. v. Washington Pub. Power Supply Sys., 621 P.2d 1299, 1302 (Wash. Ct. App. 1980)).

The flow-down agreement at issue in the present matter is broadly written.  It provides that: "[Plaintiff] also agrees that it accepts all of the terms and conditions required of [Defendant] under the said [Request for Proposals], and will indemnify and hold [Defendant] harmless for the services that [Plaintiff] provides as a [Defendant] subcontractor."  (Doc. No. 68-7.)  The document references the Request for Proposals by number and includes a statement that "[Plaintiff] agrees that is has reviewed the above-referenced [Request for Proposals] document(s)."  (Id.)  By the clear and unambiguous terms of the flow-down agreement Plaintiff accepts all terms and conditions included in the Request for Proposal.  This is precisely the type of agreement that courts have found to incorporate both the substantive and procedural terms of a general contract into a subcontract.  See, e.g., Dynamic Drywall, Inc. v. Walton Constr. Co., L.L.C., No. 06-1280, 2007 U.S. Dist. LEXIS 5473, at *2-*4 (D. Kan. Jan. 18, 2007) (concluding that the flow-down agreement incorporates the prime contract's forum selection clause into a subcontract where the flow-down agreement provides that the subcontractor "shall assume toward the contractor all obligations and responsibilities which the contractor, under such documents, assumes toward the owner"); Scott Co. v. U.S. Eng'g Co., No. 94-1963, 1994 U.S. Dist. LEXIS 13585 (N.D. Cal. Sept. 16, 1994) (incorporating a forum selection clause from a prime contract to a subcontract where subcontract includes a flow-down agreement providing

that "subcontractor is hereby bound to contractor by the same terms and conditions by which contractor is bound to the prime contractor"); Wick, 680 P.2d at 1106 (concluding that in an action by a contractor against a subcontractor flow-down agreement incorporates both the substantive and remedial provisions of the prime contract where the flow-down agreement provides that the subcontractor assumes "all the obligations and responsibilities which the contractor assumed toward the owner").

Plaintiff argues that the flow-down agreement at issue here should be narrowly construed as providing that the Commonwealth may enforce the terms and conditions in the Request for the Proposals, but that Defendant cannot. As explained above, this interpretation is at loggerheads with the interpretation other courts have given flow-down agreements. Further, the sentence of the agreement directed at Plaintiff's acceptance of the terms and conditions of the Request for Proposals, also includes an express indemnification provision[3] that defines Defendant's rights as to Plaintiff. The Court further notes that the very next sentence of the agreement explains that the flow-down provision was included for the purpose of inducing Defendant to use Plaintiff as a subcontractor. That the flow-agreement is to serve this purpose further supports the proposition that the intention of the agreement was to govern the relationship between Defendant and Plaintiff, and not merely to govern relations between Plaintiff and the Commonwealth. Accordingly, the Court finds that by the terms of the flow-down agreement Plaintiff is placed in the same position in relation to Defendant, as Defendant is to the Commonwealth.

Because Plaintiff entered into an agreement with Defendant expressly incorporating all terms and conditions required of Defendant in the Request for Proposals, the Court is

_____

[3] As noted above, this provision is apparently an attempt to address the concerns raised by the Pennsylvania Supreme Court in Bernotas, 863 A.2d at 482-84.

constrained to apply the flow-down agreement as written and apply the relevant terms of the Request for Proposal.  In so doing, the Court must conclude that Plaintiff's claims are barred. First, the Request for Proposals provides that: "Until the selected Offeror receives a fully executed and approved written contract from the Issuing Officer there is no legal and valid contract, in law or in equity, and the Offeror shall not begin to perform."  (Doc. No. 68-49 ¶ I-27k.)  It is undisputed that no written contract was entered into by the parties.  Therefore, in the absence of any written agreement, this provision bars the finding of an oral contract in relation to the Request for Proposals at issue in this case.  See Essner v. Shoemaker, 143 A.2d 364, 366 (Pa. 1958) ("[I]f the parties themselves contemplate that their agreement cannot be considered complete, and its terms assented to before it is reduced to writing, no contract exists until the execution of the writing."); Krause v. Great Lakes Holdings, Inc., 563 A.2d 1182, 1186 (Pa. Super. Ct. 1989).  Likewise, the Request for Proposals includes a provision barring damages for lost profits.  Specifically, the Terms and Conditions of the Request for Proposals provides that: "In no event shall the Contractor be paid for any loss of anticipated profit (by the Contractor or any Subcontractor), loss of use of money, or administrative or overhead costs."  (Doc. No. 68-2 ¶ 27(d)(2).)  Because the only remedy sought by Plaintiff is anticipated lost profits, summary judgment would be warranted on this basis as well.  Finally, the Terms and Conditions of the Request for Proposals also includes a provision permitting termination of a contract without cause.  (Id. ¶ 27(a).)  Therefore, even assuming a contract was formed, Defendant can not be held liable for breach of contract for exercising its contractual rights to terminate the contract. See Pipkin v. Pa. State Police, 693 A.2d 190, 191 (Pa. 1997).

The flow-down agreement at issue here is drafted broadly.  Courts interpreting similar

provisions have held that such agreements should be read as to place the subcontractor in the same position in relation to the general contractor, as the general contractor is to the party hiring the general contractor.  Plaintiff has identified no case law to the contrary.  When one does apply the terms of the prime contract to the relationship between Defendant and Plaintiff, it becomes clear that Plaintiff cannot succeed on its claims.  The general contract requires a written agreement; there was none here.  The general contract bars lost profit damages; these are the only damages sought.  Finally, the general contract permits termination without cause, and a party cannot be held liable for terminating a contract it had a contractual right to terminate.  Accordingly, based on the terms of the Request for Proposals, which by virtue of the flow-down agreement governed the relationship between Defendant and Plaintiff, the Court must find that summary judgment is warranted on Plaintiff's claims.

### C.       Authority of Ms. DeRogatis to Bind Defendant

Finally, although summary judgment would be warranted based on the flow-down agreement alone, the Court considers the authority of Bette DeRogatis to enter into a contractual relationship with Plaintiff on behalf of Defendant.  Plaintiff alleges that the oral agreement was consummated during a February 25, 2009 meeting, when Ms. DeRogatis informed Plaintiff that Plaintiff and Defendant had a "deal."  Underlying this conclusion is the premise that Ms. DeRogatis had either the actual or apparent authority to bind Defendant to a contractual obligation.  The Court first considers whether Plaintiff has met its burden on the issue of whether Ms. DeRogatis had the actual authority to bind Defendant.  To the extent necessary, the Court will then consider whether Ms. DeRogatis had the apparent authority to bind Defendant.

Defendant argues that Ms. DeRogatis did not have the actual authority to enter into an

oral agreement on behalf of Defendant.  In support of this contention, Defendant provides an affidavit from Ms. DeRogatis in which she affirms that she "did not have any authority from [Defendant] to enter into any kind of binding contract with [Plaintiff] on [Defendant's] behalf." (Doc. No. 68-23.)  Plaintiff identifies no evidence rebutting this affidavit.  Nor does Plaintiff specifically deny Defendant's statement in its statement of material facts that Ms. DeRogatis did not have the actual authority to bind Defendant.  (Doc. No. 67 ¶ 101; Doc. No. 71 ¶ 101.)  Nor does Plaintiff make any arguments on the issue of Ms. DeRogatis's actual authority to enter into an oral contract with Defendant.  In the absence of any evidence of record to the contrary, the Court must accept Ms. DeRogatis's affidavit that she did not have the authority to bind Defendant as true and conclude that Plaintiff has failed to establish that Ms. DeRogatis had the actual authority to enter into an oral agreement on Defendant's behalf..

Because Plaintiff has failed to create a dispute of material fact on the issue of Ms. DeRogatis's actual authority, Plaintiff's claims can only survive summary judgment if Plaintiff establishes that Ms. DeRogatis was imbued with the apparent authority to make an oral agreement on behalf of Defendant.  The doctrine of apparent authority refers to an agent's ability to bind its principal in the absence of actual authorization from the principal.  See Universal Computer Sys., Inc. v. Med. Servs. Ass'n, 628 F.2d 820, 823 (3d Cir. 1980); Revere Press, Inc. v. Blumberg, 246 A.2d 407, 410 (Pa. 1968).  "Apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent authority he or she purports to exercise."  Turner Hydraulics v. Susquehanna Const., 606 A.2d 532, 534 (Pa. Super. Ct. 1992) (citing Stallo v. Ins. Placement Facility of Pa., 518 A.2d 827 (Pa. Super. Ct. 1986)).  An agent will be found to possess apparent

authority where "a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise." Universal Computer, 628 F.2d at 823 (quoting Apex Fin. Corp. v. Decker, 369 A.2d 483, 485-86 (Pa. Super. Ct. 1976)).  The burden of establishing the existence of apparent authority rests with the party asserting it.  Apex, 369 A.2d at 485.

Whether an agent possesses the apparent authority to bind its principal, and the scope of any apparent authority, is a question of fact for the fact finder.  Turner Hydraulics, 606 A.2d at 534-35.  Summary judgment is warranted on a question of fact, however, where the party moving for summary judgment does not bear the ultimate burden of proof at trial and "points out" to the court that there is an absence of evidence supporting the non-moving party's claim. Conoshenti, 364 F.3d at 140.  The non-moving party then can only survive summary judgment if it is able to identify evidence of record that creates a genuine issue of material fact.  Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).

Defendant contends that to the extent Plaintiff relies on Ms. DeRogatis's apparent authority to bind Defendant, summary judgment must be entered against Plaintiff because Plaintiff has failed to identify any facts that would support a finding that Defendant led Plaintiff to believe Ms. DeRogatis possessed the apparent authority to bind Defendant.  That is, Defendant argues that Plaintiff has failed to identify any conduct by Defendant to support a finding of apparent authority and instead relies solely on Ms. DeRogatis's conduct in support of its position.  Because an agent's apparent authority emanates from the principal, an agent cannot "simply by his own words, invest himself with apparent authority." Jennings v. Pittsburgh Mercantile Co., 202 A.2d 51, 54 (Pa. 1964); Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d

1348, 1353 (Pa. Super. Ct. 1992).  To that end, Plaintiff cannot rely solely on the representations

made by Ms. DeRogatis in support of its position.  Id.; D & G Equip. Co. v. First Nat'l Bank,

764 F.2d 950, 954 (3d Cir. 1985) ("Under Pennsylvania law, apparent authority flows from the

conduct of the principal and not from that of the agent.").  Rather, Plaintiff must point to "written

or spoken words or any other conduct of the principal which, reasonably interpreted, causes the

third person to believe that the principal consents to have the act done on his behalf by the

person purporting to act for him."  Rowland v. Commonwealth Dep't of Gen. Servs. for the State

Armory Bd, Dep't of Military & Veterans Affairs, 820 A.2d 896, 898 n.3 (Pa. Commw. Ct.

2003) (quoting Restatement (Second) of Agency § 27 (1958)); Restatement (Third) of Agency §

3.03 (2006) .

In the present matter, Plaintiff has failed to identify any evidence from which a

reasonable fact finder could conclude that Ms. DeRogatis was vested with the authority to bind

Defendant to a contract.  Plaintiff's theory of apparent authority is based solely on the fact that

she was an area sales vice president for government and education, that she identified herself as

in charge of the project, and that everyone Mr. Clark dealt with appeared to report to her.[4]  (Doc.

No. 70 at 32.)  In short, Plaintiff contends that Ms. DeRogatis seemed important, and therefore,

Plaintiff was justified in assuming she was indeed important.  These facts, however, do not

permit a finding of apparent authority.  Apparent authority can only result from a manifestation

---

[4] At various points, Plaintiff also contends that Mr. Clark stated that Ms. DeRogatis told
him she had the authority to bind Defendant.  Mr. Clark makes clear in his deposition, however,
that whether Ms. DeRogatis had the actual authority to bind Defendant was something that he
never discussed with Ms. DeRogatis, rather he "assumed" she had the authority.  (Doc. No. 68-
50 at 231:10-234:17.)  Even if there were a dispute regarding whether she told Mr. Clark that she
had the actual authority to bind Verizon, an agent's statements alone cannot vest that agent with
apparent authority to bind a principal.

of the <u>principal</u>, in this case Defendant.  <u>D & G</u>, 764 F.2d at 954 ("Under Pennsylvania law,

apparent authority flows from the conduct of the principal and not from that of the agent.").  The

only action Plaintiff alleges that Defendant took is giving Ms. DeRogatis a title.

The Pennsylvania Supreme Court, however, expressly rejected the argument that an

individual's status as "vice president and treasurer-comptroller" could provide the basis for a

reasonable inference that the person with those titles had the apparent authority to accept offers

on behalf of the principal.  <u>Jennings</u>, 202 A.2d at 54-55.  The Pennsylvania Supreme Court

reasoned that permitting such an inference would undercut the role of a board of directors in

delegating authority to corporate officers.  <u>Id.</u>  This holding applies with even greater force in the

present case.  In a large corporation with a glut of vice presidents, directors, and managers, the

assumption that these individuals are vested with broad authority or are executive officers of the

corporation is unreasonable.  Indeed, as recognized by the Restatement of Agency, in large

corporations "vice presidents" of divisions or branches do not hold general corporate offices and

often the "promotion of a sales person to 'vice presidential' status is simply a reward for

excellent job performance."  Restatement (Third) § 3.03 cmt. e(4) (2006).  Permitting the

assumption that each of these "vice presidents" has the authority to bind the corporation to a

multi-million dollar oral contract based solely on a job title would render the board of directors

and their designees largely impotent to exercise their duty the direction of the corporation.

For the first time at oral argument, Plaintiff did identify two other grounds to support a

finding that Ms. DeRogatis had the apparent authority to bind Defendant.   First, Plaintiff's

counsel argued that Defendant held Ms. DeRogatis out as Defendant's exclusive point of contact

with Plaintiff for the project.  Upon a review of the exhibits and statements of material facts,

however, the Court has not found any evidence of record to support this contention.  To the contrary, based on e-mail communications in the record, it appears that Ms. DeRogatis was one of many of Defendant's representatives with whom Plaintiff's representatives engaged prior to the February 25, 2009 meeting.  (Doc. Nos. 68-3; 68-4; 68-5; 68-6; 68-7; 68-57.)  Mr. Clark's deposition confirms this understanding of Plaintiff's dealings with Defendant, in that he describes Plaintiff having contact with a number of Defendant's representatives.  (Doc. No. 68-50 at 14:19-24; 17:6-9; 32:5-17; 54:7-11; 72:14-24; 77:2-6; 162:19-23; 173:17-23; 197:10-15.)  In fact, Mr. Clark made clear that Ms. DeRogatis was not a part of the negotiations underlying the alleged oral contract, which was allegedly agreed to during the February 25, 2009 meeting.  (Doc. No. 68-50 at 196:2-7.)  Accordingly, the Court cannot credit counsel's unsupported argument that Defendant identified Ms. DeRogatis as Defendant's exclusive point of contact with Plaintiff.

Second, at oral argument, Plaintiff's counsel observed that Ms. DeRogatis was selected to present Defendant's proposal to the Commonwealth.  The Court notes that this presentation occurred approximately two months after the alleged oral agreement in question was executed.  (Doc. No. 68-25.)  More importantly, however, while Ms. DeRogatis did participate in the presentation, she was only one of five presenters, four of whom were "Vice Presidents," including the Senior Vice President for Government and Education.  (Doc. No. 68-25 at 4.)  In light of Ms. DeRogatis's position as the Area Sales Vice President for Government and Education, presumably seeing the Senior Vice President for Government and Education would have alerted Plaintiff and Mr. Clark, who attended the presentation, that Ms. DeRogatis was not the highest-ranking individual on the project and, therefore, that she may not have had the

16

plenary authority to make oral multi-million dollar subcontract agreements on the project.

Ultimately, the Court is mindful of the oft-repeated warning that:

> The mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and, like a railroad crossing, suggests the duty to stop, look, and listen, and he who would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority.

Sapic v. Gov't of Turkm., 345 F.3d 347, 358 (5th Cir. 2003) (quoting Standard Acc. Ins. Co. v. Simpson, 64 F.2d 583, 589 (4th Cir. 1933)); Jurimex Kommerz Transit G.M.B.H. v. Case Corp., No. 06-3523, 2007 U.S. App. LEXIS 18113, at *11 (3d Cir. July 27, 2007) (affirming the district court's decision granting summary judgment and relying on Simpson, 64 F.2d at 589).  In the present matter, Plaintiff was entering into a contract he contends was worth approximately $7.5 million over the course of ten years – seven years plus a three-year option.  However, Plaintiff did not "stop, look, and listen" to ensure the person with whom it was dealing had the authority to make an oral agreement on behalf of Defendant.  Rather than inquiring into whether Ms. DeRogatis had the actual authority to make a multimillion dollar oral contract on behalf of Defendant, the uncontested evidence suggests that Plaintiff relied solely on assumptions Mr. Clark drew from Ms. DeRogatis's statements and her job title in concluding she had this authority.  Under Pennsylvania law, this is insufficient.  Because the Court cannot find that Plaintiff has presented any evidence supporting a finding that Plaintiff's belief was reasonable and based on some manifestation of Defendant and because Plaintiff fails to dispute that Ms. DeRogatis had no actual authority to bind Defendant, there is no basis from which a jury could conclude that Plaintiff and Defendant consummated a binding oral agreement.  Accordingly, the Court must grant summary judgment in favor of Defendant.

**IV.     CONCLUSION**

What is clear from this case is that Defendant and Plaintiff undertook to begin a business relationship and at some point that relationship soured.  The central dispute is whether the relationship ended before or after a contract was consummated.  Plaintiff argues an oral contract was formed on February 25, 2009, when Ms. DeRogatis told Mr. Clark that they had a deal.  While Plaintiff may have believed a legally binding deal had been struck, the evidence of record does not support its position.  There is no evidence that Ms. DeRogatis had the authority to make such an agreement, and in fact all the evidence indicates that she did not.  Further, Plaintiff's contention that she had the apparent authority to make such an agreement is unsupported by any evidence that Defendant held her out to Plaintiff in such a way as to support a reasonable inference that she had the authority to make a multi-million dollar oral contract.  Second, the terms of the flow-down agreement either preclude a finding that a contract was formed, or preclude a finding that Plaintiff is entitled to recovery.  The flow-down agreement incorporates terms providing that there would be no binding contract until the agreement was reduced to writing, that the contract could be terminated without cause, and that there could be no recovery for lost profits.  Here, there was no written contract.  And the remaining terms either require a finding that the contract was not breached or, if it was breached, that Plaintiff would not be entitled to the recovery sought.  Because Plaintiff is unable to identify evidence of record to support a finding that Ms. DeRogatis had the actual authority or the apparent authority to bind Defendant and because the terms of the flow-down agreement bars recovery, the Court must grant summary judgment on all claims remaining in this action.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARK RESOURCES, INC.,** | **:** | |
|     **Plaintiff** | **:** | **Civil Action No. 1:10-cv-1119** |
| | **:** | |
|     **v.** | **:** | **(Chief Judge Kane)** |
| | **:** | |
| **VERIZON BUSINESS NETWORK** | **:** | |
| **SERVICES, INC.,** | **:** | |
|     **Defendant** | **:** | |

**<u>ORDER</u>**

    **AND NOW**, on this 18th  day of April 2012, **IT IS HEREBY ORDERED THAT**

Defendant's motion for summary judgment (Doc. No. 65) is **GRANTED**.  The clerk of court is

directed to enter judgment in favor of Defendant and close the case.

                   S/ Yvette Kane
                  Yvette Kane, Chief Judge
                  United States District Court
                  Middle District of Pennsylvania

19